## Kessler v. Sunbury & Selinsgrove Railway Company.

A. F. Gilbert and C. M. Clements, for application.

George B. Reimensnyder and A. Reed Hayes, contra.

POTTER, P. J., Jan. 6, 1930.—The Sunbury & Selinsgrove Railway Company is a corporation which owns and operates a trolley line between Sunbury and Selinsgrove, a distance of approximately five miles, and has done so for some years back. They cross the Susquehanna River at Sunbury by using the

bridge of The Sunbury Bridge Company, for which they pay, or have contracted to pay, the monthly sum of $83.33 as toll or rental. This corporation also owns and operates at the proper season of the year Rolling Green Park, which is situate along its line about midway between Sunbury and Selinsgrove, and is the best paying asset of the company. This Park is open probably three or four months, perhaps slightly more, in each summer, and we think is a money-maker if its receipts are properly and judiciously handled and husbanded. During the park season, cars are operated on this line every fifteen or twenty minutes during the day, with a less number at night after park hours, and all of them are usually well filled with passengers, the fare being 14 cents for the full trip, or 7 cents to the Park from either terminus.

Notwithstanding the heavy travel on this road, and the large patronage of the Park, this corporation, for some reason, of which we have our well-founded opinion, has continually been pressed for funds, and of late has not been able to pay its current bills. A reorganization has lately been effected, which has brought its affairs under the jurisdiction of this court, which, up to four or five months ago, we did not have. So it was turned over to us full of debts, with creditors clamoring for their money, and we are asked to make whole cloth out of rags and tatters. About the first notable thing that came under our official observation was a petition for the appointment of receivers. The appraised value of the assets is fixed at $362,585.26. The liabilities are fixed at $196,468.22. Just why receivers are necessary, after more mature thought, we are at a loss to know, unless it was to prevent creditors from pressing their claims by suit. Anyhow, on Sept. 3, 1929, we appointed two temporary receivers, which appointment, not long thereafter, we made permanent, George D. Witmer, of Selinsgrove, and William H. Greenough, of Sunbury, being the receivers.

On Oct. 21, 1929, these receivers presented to us their petition, praying for an order for the issuance of receivers' certificates in the sum of $30,000 in order to pay the following liabilities:

| | |
|---|---:|
| To the Pennsylvania Power and Light Co. for a converter. | $1,924.37 |
| To the Pennsylvania Power and Light Co. for electric current | 1,524.70 |
| To J. G. Brill Co., balance due on three cars | 8,864.40 |
| Balance on purchase of cars | 9,000.00 |
| For corporate taxes due the Commonwealth | 1,200.00 |
| Toll due Sunbury Bridge Co. to Aug. 1, 1929 | 575.00 |
| Taxes due the City of Sunbury | 1,050.00 |
| For enclosing the pavilion in Park (estimated) | 4,000.00 |
| Expenses of litigation in Northumberland and Snyder Counties | 1,000.00 |
| Premium on receivers' bonds and appraisers' fees | 500.00 |
| Expenses of receivers and their counsel | 1,500.00 |
| Interest on bonds to Jan. 1, 1930 | 2,835.00 |
| Total | $33,972.87 |
| Item of enclosing the pavilion was withdrawn | 4,000.00 |
| Net balance for which certificates are asked | $29,972.87 |

We are asked to permit the issuance of receivers' certificates in the amount of $30,000, they to supersede the lien of the bondholders on the property of this corporation, and they to be a first lien. On Oct. 19, 1929, when this matter first came before us, acting under a misapprehension of the facts, we made

such an order. Since that time we have learned that the bondholders had no notice of the application; therefore, they had no opportunity to object to it. They had no day in court. We then set Dec. 9, 1929, at two o'clock P. M., as the time we would hear the application after all interested parties had notice. On that day vigorous opposition was made by the bondholders and persons interested. The hearing was continued to Dec. 20, 1929, when more testimony was taken and argument made. At the hearing of Dec. 9, 1929, it was stated to us that these receivers were in the direst necessity of funds to pay the interest to the bondholders, and that some of them had threatened to bring proceedings on the mortgage if their interest was not paid by Jan. 1, 1930. In view of these statements so made, we authorized the issuance of certificates in the sum of $8000 in order to tide over this critical state of affairs till we could finally dispose of the application. At the same time, we were told that other of the claimants, whose claims we have hereinafter allowed, were pressing for payment, so we made a short order for the issuance of certificates without any calculation at bar.

The order of Oct. 19, 1929, for the issuance of certificates in the sum of $30,000, since we have become better acquainted with the facts, is hereby avoided with the same force and effect as if it had not been made.

In disposing of this application, we are mindful of the fact that these bondholders bought their bonds feeling that they had a first lien on the property, which they have, exclusive of taxes. If certificates are issued, their lien will be impaired to the extent of the amount, wherefore we think we should be very guarded in allowing the issuance of them, and only in such amount as will enable this corporation to operate its business. We might add that by the issuance of the certificates, and the paying of these claims, with the exception of tax claims, these common creditors would be given priority over the bondholders.

In the case of Rutherford v. Railroad Co., 178 Pa. 38, receivers' certificates were allowed to finish an unfinished railroad. The application for them was favored by the president and by 491 out of 510 bondholders. The appellate court say: "Our first impression was that the learned judge had gone too far in authorizing the issuance of receiver's certificates for the completion of an unfinished railroad, that to do so would be establishing a dangerous precedent, etc. Ordinarily, this would undoubtedly be so, and we would not hesitate to express our disapprobation of such proceedings; but, upon fuller consideration of the special and somewhat peculiar facts and circumstances of this case, we are not prepared to say that he was so clearly in error that the proceedings should be reversed. We are rather inclined to think that to sustain the contentions of the appellants would be prejudicial to all parties concerned. In matters that rest so largely in the sound discretion of the trial court as do cases of this kind, we should not interfere unless there appears to have been manifest abuse of discretion." This case also decides that the court has the power to authorize its receiver to raise money necessary for the *preservation* and completion of a railroad and to make the same chargeable as a lien thereon and to allow prior claims for materials and labor for the six months preceding the appointment of the receivers: Union Trust Co. v. Illinois Midland Ry. Co., 117 U. S. 434.

Receivers' certificates are authorized only when the expenditures contemplated are absolutely necessary to prevent the property from destruction or serious injury: Cort's Application, 7 Dist. R. 536.

Many more cases have been cited to us mostly in opposition to the issuance of certificates, which, under our view of the case, we need not herein refer to,

The general rule seems to warrant no issue of certificates except to preserve the property of the corporation.

When the receivers were appointed, they inherited, so to speak, the list of obligations hereinbefore enumerated. And we want to help them in a lawful manner to pay them. Now, taking up the items *seriatim* as petitioned for:

1. The item of $1524.70, current power for August, 1929, which includes the penalty for non-payment when due. This is an unpaid bill which should have been paid, and we think it could have been had the funds been properly managed. It is a bill incident to the operation of the railway line and the Park. While it may be true that the Pennsylvania Power and Light Company could not refuse to continue electrical current because of its non-payment, nevertheless it is an outstanding bill contracted incident to running expenses. In the face of some of the appellate decisions, we must remark that this power company could not be expected to furnish power indefinitely without payment. We will allow this bill.

2. Bill of the Pennsylvania Power and Light Company for balance due on converter of $1924.37. Under the contract under which this converter was bought, a certain amount was to be paid at certain stated times. These payments have so far been met as they fell due, and we fail to see why they cannot be met in the future and so continue till the bill is fully paid. The claimant cannot take the converter back of its own volition. The contract under which it was obtained is not a lease or bailment. If anything, it is a conditional sale, a note having been given for it. We cannot allow this item.

3. Bill of J. G. Brill Company for balance due on three trolley cars of $8864.40. This is also a conditional sale and not a lease or bailment, wherefore the cars cannot be taken by the claimant. Payments on the price of these cars have been heretofore made, and they can be made in the future. So we see no legal reason for allowing this item and to that amount impairing the security of the bondholders. This item is not allowed.

4. Balance due on purchase price for electric railway cars, $9000. This sum also springs from the purchase price of the three-mentioned trolley cars, their total cost having been $35,457.60, or $11,819.20 for each car. The cost of these three cars has been reduced to $17,864.40 by payments made. It seems that Mr. William H. Greenough, one of the now receivers, some few years ago, advanced this sum of $9000 to pay on these cars, and he now holds this claim against this corporation. No doubt he made this advancement out of the goodness of his heart, but, under present conditions relative to this company, he is only a common creditor, whose claim cannot be paid by funds realized from receivers' certificates, and, we are sorry to say, must, in the face of this opposition, take his chances with others. We cannot allow this claim.

5. Corporate taxes due the Commonwealth, $1200. Some authorities lean toward the disallowance of this item. This sum is a prior lien against the property of this corporation. If it stopped there, we would not allow it. But, being overdue, the Commonwealth is now charging interest at the rate of 12 per cent. as a penalty for non-payment. Receivers' certificates bear 6 per cent., or, by paying it, this corporation would gain 6 per cent., or $72 per annum for the bondholders. For this reason, we will allow the claim.

6. Bill for toll due the Sunbury Bridge Company to Aug. 1, 1929, of $575. While the contract for the use of this bridge does not provide for a stoppage of its use for non-payment of the toll, and as a public service corporation the claimant might not be permitted to do so, yet the fact remains that this debt

was contracted in the operation of the cars and this line within six months preceding the appointment of receivers. This also applies to the electric current bill of $1524.70. See Rutherford *v.* Railroad Co., 178 Pa. 38, *supra.* We will allow this item.

7. Bill for taxes due the City of Sunbury, $1050. We think this item should be allowed. While it is true municipal taxes are a lien on the property of this corporation prior to that of the bondholders, yet we think these taxes should be paid, as should those of all corporations and individuals, as emblematic of good citizenship in paying for the protection afforded by the different branches of government under which we live. The payment of them may prevent the embarrassment of probable levy with additional costs. And the law also favors the payment of taxes out of receivers' certificates. We will allow this item.

8. Expenses of conducting litigation in Northumberland and Snyder Counties, $1000. At best, this can be only an estimate. We have no bills for attorneys' services or other costs or expenses submitted. We think this sum is too high. Of course, we are told by counsel that this is to be applied to retaining fees, surveys, maps, photographs, expert witnesses and the like, and that without retaining fees counsel cannot be procured. If this sum, or two-thirds of it, is to be applied as retaining fees, we wonder what the total counsel fees will be. On this item we will allow $500, and when the lawsuits are ended, we want a bill for fees submitted to us, with a description of the work done, which may be refused or affirmed, according to its amount. We want one fact to be plainly understood, which is, that this corporation, while under our jurisdiction, is not going to be a "free for all grab game." We will allow $500 on this item and consider it well paid for.

9. For premiums on receivers' bonds and appraisers' fees, $500. This should be itemized, showing us the amount of the appraisers' fees and the premium of the bonds. However, no objection was made to this item, and we will allow it.

10. Expenses of receivers and their counsel, $1500. It is with great reluctance that we comment on this item, because we think it is too large. These receivers were appointed on Sept. 3, 1929, and the petition for receivers' certificates were filed on Oct. 19th, or for a period of seven weeks the sum of $1500 is asked as compensation for the receivers and their counsel, which would amount to $214.28 per week or $12,142.56 per year. This would mean a yearly income to each of $4047.52. Entirely too much. This nearly-wrecked corporation cannot stand for compensation like this if it is ever to be gotten on its feet again. We want these receivers and their counsel to be compensated for their time, trouble and responsibility, and we think each should receive a yearly salary, payable monthly or quarterly, but we want to know how much that annual salary is to be. If it is fixed too high, we will not approve it. We do not want salaries paid as they were before, as we have been told. We are not attempting to fix a standard for salaries. But in this instance we will allow the sum of $600 tentatively for the months of September and October, 1929, which would be $100 per month for each of the three.

11. Interest on bonds due Jan. 1, 1930, $2835. We were told in open court that if this interest was not paid when due, some of the bondholders threatened proceedings on the mortgage to collect their interest. They would be very foolish if they did, thus destroying the security of their investments. We cannot believe any of them would attempt thus to sacrifice his security, which would surely occur if this line of proceeding was followed out. Anyhow, nothing of this kind can occur before April 1, 1930, and this court will

be here and will also have something to say regarding such proceedings. This item at this time is refused.

This disposes of the list of items submitted to us for the payment of which receivers' certificates have been asked. As we have revised this list, we are willing that certificates be issued in the sum of $6000, hereby amending our order of Dec. 9, 1929. Our correct list as we have allowed the items sums up $5949.70.

Once again we want to say it is our aim to rebuild this corporation, and we will take no steps which, in our judgment, will be a detriment towards the accomplishment of this end. The item of $4000 for enclosing the pavilion in the Park for winter service has been withdrawn by counsel, and is not herein considered.

## Findings of fact.

1. On Sept. 3, 1929, George D. Witmer and William H. Greenough were appointed receivers of the Sunbury & Selinsgrove Railway Company, which is a corporation.

2. On Oct. 19, 1929, the said receivers presented their petition, asking for the issuance of receivers' certificates in the sum of $30,000.

3. From the appraisement filed, the assets of this corporation amount to $362,585.26, and the liabilities to $196,478.22.

4. From the appraisement filed, this corporation is not insolvent.

5. As to the claim of the Pennsylvania Power and Light Company of $1924.37, for balance due on electric converter, there is no testimony or exhibit that discloses this to have been a bailment or lease, or that the claimant could repossess the same.

6. As to the item of $9000, car trust notes for street cars, there is no testimony or exhibit that discloses any bailment or lease. This money is due William H. Greenough for money advanced by him in part payment for cars long prior to the appointment of receivers.

7. As to the bill of J. G. Brill Company of $8864.40 for balance due on purchase price of three cars, there is no evidence tending to show the contract to be a bailment or lease, or that the claimant could repossess them.

8. As to the item of $575 for tolls due the Sunbury Bridge Company, there is no evidence showing that this company has threatened to discontinue the service of the bridge if the said toll was not paid.

9. As to the claim of the Commonwealth of $1200 for taxes, there is evidence of demand for payment by the Commonwealth by bill submitted. There is no evidence that the Commonwealth has threatened to collect the amount by legal process.

10. As to the claim of the City of Sunbury for taxes, $1050, there is evidence of demand made for payment by bill submitted. There is no evidence of suit threatened for collection.

11. As to the item of $1000 for expenses in conducting litigation in Northumberland and in Snyder Counties, there is no evidence of the sum needed, nor what service was or is to be rendered, nor what such service is approximately worth.

12. As to the item of $1500 for expenses of receivers and their counsel, there is no evidence as to what service any of them rendered, or are to render, nor what their service is worth.

13. As to the item of $2835 for interest on bonds due Jan. 30, 1930, the bonds draw 5 per cent. interest, while receivers' certificates draw 6 per cent. interest. There is no evidence of pressing need for this item at this time.

## Conclusions of law.

1. As to the item of $1924.37 of the Pennsylvania Power and Light Company for an electric converter, this is a conditional sale and not a bailment or lease, and cannot be allowed.

2. As to the item of $8864.40 due J. G. Brill Company, this is also a conditional sale, not a bailment or lease, cannot be repossessed by the claimant, and cannot be allowed.

3. As to the item of $9000 due on cars, this is a common claim due William H. Greenough, was paid by him to J. G. Brill Company, occurred more than six months before receivers were appointed, and cannot be allowed.

4. As to the item of $575 due the Sunbury Bridge Company, there is evidence of a contract with this company and the Sunbury & Selinsgrove Railway Company. The debt was contracted within six months before the appointment of receivers, and, we think, is a valid claim for payment from funds derived from receivers' certificates.

5. As to the item of $1200 due the Commonwealth for taxes, this is such a claim as can be paid from the proceeds of receivers' certificates.

6. As to the item of $1050 for taxes due the City of Sunbury, it can be included as a claim to be paid out of the proceeds of the sale of receivers' certificates.

7. As to the item of $1000 for litigation, in the absence of the proper degree of proof as to services to be performed, or such as have been performed, we do not think the full amount of this item can be allowed.

8. As to the item of $1500 for receivers and their counsel, in the absence of proof of the service rendered or its value, we do not think this item can be allowed in full.

9, There is no evidence before us that will justify the issue of receivers' certificates in payment of the item of $2835, in payment of interest on bonds.

10. Receivers are not entitled to certificates until a detailed statement of the sum needed is made, and the purpose of it with clear proof made to the court and the necessity therefor. Such certificates are not debts of the company, but those of the receivers, backed by the pledged faith of the court that the property on which they are made a charge is in the possession of the court, and that it will provide for the payment of such certificates before the property or the proceeds of it shall pass out of its control. They should, therefore, be issued with the utmost circumspection and never in excess of the present urgent need.

11. The question of the priority of receivers' certificates and loans over existing mortgage liens has not very often been a matter of litigation, because in almost all instances in which the courts have authorized receivers to borrow money and make their obligations a first lien upon the property, the mortgagors have themselves asked for the orders for these purposes in advance, or have expressly assented to the making of them, and, of course, they are in such cases precluded from afterward claiming any priority over the lien thus created.

12. The decree of Oct. 19, 1929, was made under a misapprehension of the facts, was made without notice to the trustee or to the bondholders, without the proper hearing, and is avoided.

13. The petition for the issuance of certificates does not set forth that the expenditures contemplated are absolutely necessary to preserve the property from destruction or serious injury. We think it should do so.

14. An order directing the issue of certificates which are to be a first lien on the property cannot be made except upon an investigation and hearing of

an application showing sufficient facts fully to advise the court of the propriety of such issue.

15. Receivers' certificates are only issued for the purpose of paying the incidental and necessary expenses for carrying forward the business of the corporation, such as supplies, rentals and equipment necessary for the operation of the road, as well as to preserve and conserve the property, so that it may continue a going concern.

16. It is the duty of the court to preserve liens rather than to displace them by subsequent encumbrances.

17. If the receivers' certificates are authorized by this court to the extent of $30,000, it will impair the lien of the bondholders, which would be a breach of faith with those who purchased the bonds at full value.

18. That to make certain improvements for the purpose of increasing income is a hazardous proposition, nor has any definite plan been laid before the court for it. The court should be properly advised of the facts on which to base a decree for issuance of $30,000 or less of receivers' certificates.

19. "The decree of the court, under date of Nov. 11, 1929, will have to be withdrawn, as it is not based upon any proper proceeding as indicated hereinbefore, under paragraph fourteen, and for the further reason hereinbefore set forth with reference to proper and sufficient evidence to substantiate the right of the receivers to have certificates issued upon a proper basis, and proper exercise of judicial discretion of the court. Receivers' certificates cannot be issued in a lump sum without indicating what items are to be paid thereout, and especially is this true if they are to become prior liens to that of the first mortgage, securing bonds issued for value." Note. We made no decree under date of Nov. 11, 1929. If this request refers to our order of Oct. 19, 1929, we heartily concur with this conclusion of law as framed by counsel.

20. The authority of the court is not altogether discretionary; judicial discretion is limited by settled principles of equity.

21. The appointment of receivers vests in the court no absolute control over the property, and no general authority to displace vested contract liens. It is the exception and not the rule that such priority of liens can be displaced.

22. The principle upon which receivers' certificates are issued is based on the necessity of the issuing of the same for the operation of the road and for such expenditures as are necessary to preserve the property from destruction or serious injury.

23. Even where a referee found that the workmen were riotous and that but for the issuing of the certificates the property would probably have been destroyed or seriously injured, it was held that neither the facts shown in the application nor the referee's finding justified the postponement of the mortgage lien.

24. When the court authorizes the receiver to borrow money and issue certificates, which are made a charge on the property, the holders of such certificates take them subject to the rights of those having prior liens, and who had not, but should have had, notice to appear in court, and when such appear in court they are entitled to contest the necessity, validity, effect and amount of such certificates.

25. The class of preferred debts to be so paid include taxes on property, wages of officers and employees of every grade employed in operating the road; the cost of materials and supplies furnished which are necessary to put the road and its rolling stock in a safe condition for the transportation of persons and property.

26. Generally speaking, the power and light company would not be permitted to cut off power from the railroad company because of unpaid bills. However, there are exceptions to this rule.

And now, to wit, Jan. 6, 1929, upon due consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

The receivers of the Sunbury & Selinsgrove Railway Company are hereby authorized and empowered to issue receivers' certificates in a sum not to exceed $6000, in payment of the following debts due from the said company, to wit:

| | |
|---|---:|
| Pennsylvania Power and Light Company for current up to and including the month of August, 1929 | $1524.70 |
| For corporate taxes overdue to the Commonwealth | 1200.00 |
| For toll due the Sunbury Bridge Company to Aug. 1, 1929 | 575.00 |
| For overdue taxes due the City of Sunbury | 1050.00 |
| For expenses in conducting litigation in two counties | 500.00 |
| For premiums on receivers' bonds and appraisers' fees | 500.00 |
| For receivers' and counsel's compensation | 500.00 |
| Total | $5949.70 |

These said certificates to bear interest at a rate not exceeding 6 per cent., and to be a lien upon the personal property and earnings of the said Sunbury & Selinsgrove Railway Company in the possession of the receivers prior in right to all other claims or liens thereon, and to be first payable thereout. That the order of this court made on Oct. 19, 1929, is hereby vacated and set aside, and the order of this court made on Dec. 9, 1929, is amended so as to conform with this decree. This decree is entered *nisi*, of the filing of which the prothonotary is directed to give immediate notice to all counsel concerned, with liberty to file exceptions thereto, as prescribed by the equity rules.

NOTE.—Decree sustained on exceptions.